### UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

**MICHAEL JAMES EVANS,**

Civil Case No. 2:22-cv-01051-YY

**Petitioner,**

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

**v.**

**ERIN REYES , SUPERINTENDENT,**

Respondent.

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Michael James Evans, pro se, respectfully petitions this Court, pursuant to 28 U.S.C. § 2241, to issue a Writ of Habeas Corpus. Who is illegally in custody in violation of Petitioner's First, Fifth, Sixth, Thirteenth and Fourteenth Amendment rights to the United States Constitution, and Article I, §§ 8, 10, 11, and 41 of the Oregon Constitution; and moves this court for an order to appoint counsel and produce his body immediately before the state court, so that judicial inquiry may be made into the legality of the restraint or imprisonment and appropriate judgment rendered thereon.

### CONVICTIONS UNDER ATTACK

1.**Name and Location of Court:** Multnomah County Circuit Court, Portland Oregon.

2.**Docket No. :** 061035934

3.**Judgment Date / Sentencing Date:** Judgment date: 12/ 7, 2007 / Sentenced 12/ 11, 2007.

4.**Length of Sentence and Nature of Offenses:**

  a. Counts 1 - 8,  Sex abuse in the 1st Degree ( Victim A )

  b. Counts 9 – 12, Sodomy in the 1st Degree ( Victim A )

Michael James Evans
Sid No. 11668134
82911 Beach Access Rd.
Umatilla, Oregon 97882

c. Counts 13 – 15 Sexual Abuse in the 1st Degree ( Victim B )

**5.**Combined sentences of 355 Months.

**6.**<u>Pleadings</u>: Not Guilty as to all counts.

**7.**<u>Type of Trial:</u>  Jury trial.

**8.**<u>Testified at Trial?:</u> No.

## APPLICABLE APPEALLATE COURT RULING

**9.**<u>Reverse and Remand to Post Conviction Court.</u>

a. <u>Name of Court:</u>  **Oregon Court of Appeals, on remand from State Supreme Court.**

b. <u>Docket or Case No.:</u> Evans v. Nooth, 318 Or.App. 162, A161781 (Or. App. Mar 09, 2022);

On remand from Oregon Supreme Court Evans v. Nooth, 368 Or 159, 487 P.3d 42 (Or. 2021).

c.  <u>Result:</u> Agreed with petitioner that his appellate counsel failed to exercise reasonable

professional skill and judgment regarding the reversal of Counts 13 and 14, and we conclude

that petitioner was prejudiced as a result. Accordingly, we reverse and remand the post-

conviction court's judgment and leave it to that court to fashion an appropriate remedy in the

first instance... [i]n this case, our earlier decisions in *Evans I* and *Evans II* were affected by

appellate counsel's failure to exercise reasonable professional skill and judgment in developing

a harmless error argument regarding Counts 13 and 14. Had appellate counsel done so, it is

more probable than not that petitioner would have obtained a reversal of those convictions. For

that reason, petitioner is entitled to Post Conviction relief. **Copy of Ruling attached.**

d. <u>Date of result and citation:</u> March 9th, 2022

e. <u>Grounds Raised:</u> Ineffective assistance of Appellate counsel.

## GROUNDS FOR HABEAS RELIEF

At all times material to petitioner's claims for relief, he was entitled to a fair and impartial trial

Michael James Evans
Sid No. 11668134
82911 Beach Access Rd.
Umatilla, Oregon 97882

by a jury of his peers, and adequate and effective assistance of his trial counsel, and to be free

of unlawful search and seizure, and from being framed by use of court, and / or prosecutorial

misconduct, and ineffective assistance of both trial and appellate counsel denying due process

under Article I,§§ 8, 10, and 11 of the Oregon Constitution and and the First, Fifth, Sixth, and

Fourteenth Amendments to the United States Constitution. And being forced to work under

penalty of punitive sanctions after it has been determined that Petitioner was not "duly

convicted" of a criminal offense pursuant to section 1 of the Thirteenth Amendment of the U.S.

Constitution, and Article I, § 41 of the Oregon Constitution.

**A. Petitioner Filed a Timely Petition pro se for Habeas Corpus Relief.**

**B. All grounds for relief that have been raised above in this Petition have all been where
noted presented to the highest state courts having jurisdiction fully exhausting all state
remedies available to Petitioner.** All of Petitioner's remaining convictions have been reversed

and remanded and he is now being held illegally at Two Rivers Correctional Institution, being

subjected to slavery and involuntary servitude without having been "duly convicted" of a crime.

for an indefinite period of time due to lack of counsel willing to take PCR cases available to

Oregon Public Defense Services.

**1st Claim:** Petitioner is being effectively denied his First U.S Constitutional Amendment

right to access the court, as well as his rights under the Oregon Constitution's Article I, Section

8; Fifth and Sixth Amendment U.S. Constitutional rights to counsel, as well as Oregon Article

I, Section 11, and Section 10 right to justice "administered, openly and without purchase,

Michael James Evans
Sid No. 11668134
82911 Beach Access Rd.
Umatilla, Oregon 97882

completely and without delay"; and Fourteenth Amendment right to due process.

**2ⁿᵈ Claim:**   The appellate court erred in its decision to remand the case back to the PCR Court

to "determine the proper remedy"; Under false assumptions stating:

"That leaves the question of remedy. As the superintendent points out, after our decision in *Evans II,* the state dismissed the claims against A and proceeded to resentencing on claims against B. We generally agree with the superintendent that the case should be returned to the status it would have been in had petitioner's counsel provided constitutionally adequate representation-that is, with petitioner facing the possibility of retrial on the remanded counts against A as well as B. However, the post-conviction court has not had the opportunity to address the question of what remedy to fashion in light of all the circumstances, and we therefore reverse and remand for the post-conviction court to address that question in the first instance. "
*Evans v. Nooth,* 318 Or.App. 162 (Or. App. 2022) *Id*. at 16.

Due to the following reasons:

1. There was a "plea agreement" of  in place in 2010. Petitioner was told that the state

   would agree to dismiss all counts involving "A" if Petitioner agreed to dismiss his

   Motion for Demurrer on counts 13 and 14 involving "B".  See *Santobello v. New York,*

   404 US 257, 262, 92 S.Ct. 495, 30 L.Ed. 2D 427 (1971); *see also, Stone v. OSP,* 39 Or.

   App. 473, 476, 592 P.2d 1044 (1979)("Failure to scrupulously observe a plea bargain is

   cause for post conviction relief"); *Lopez v. Mills,* 249 Or. App. 674, 278 P.3d 94, 97-98

   (2012)("When a plea rests in any significant degree on a premise or agreement of the

   prosecutor, so that it can be said to be part of the inducement or consideration, such

   promise must be full filled.")

2. It would violate Ex Post Facto laws of Article I, Section 21 of the Oregon Constitution.

   See *State v. Dufort*, 111 Or. App. 515, 519, 827 P.2d 192, 194 (Or. App.1992)("It is well

   settled that an amendment to a statute of limitations enlarging the period of time with an

   action can be brought as to pending causes of action is not retroactive legislation, and

Michael James Evans
Sid No. 11668134
82911 Beach Access Rd.
Umatilla, Oregon 97882

does not impair any vested right"); also, *Nichole v. Wilber*, 256 Or. 418, 420, 473 P.2d 1022 (1970).

3.  There is no statutory authority that authorizes the trial court to revive dismissed charges. Or. Rev. Stat. § 135.753.  Bolstered by Article VII, §5 of the Oregon Constitution. And the fact that under Article I, § 12, and the Fourteenth Amendment to the U.S. Constitution "double jeopardy" attaches.  Thus, the retroactive application of 2015 Amendments to Or. Rev. Stat. § 135.753 would violate ex post facto provisions of the state and federal constitution.

     Therefore, at worst, counts 13 and 14, and only those counts should have been remanded back not to the PCR Court, but to the original Trial Court.  If not outright dismissed for lack of any actual evidence that wasn't coerced or instituted through known outright brainwashing techniques.

     In fact Petitioner was not told until some years after the fact that the sole reason why the state was so eager to come forth and present the "deal" to dismiss all counts involving "A" was due to the fact that neither "A" nor her grandmother would agree to appear for a retrial the second time around to re-testify. They both flatly refused.


## OTHER INFORMATON

**1.** Petitioner has no other petitions or appeals pending in this case pending in any other state of federal court that's being challenged here.

**2.** The full names and addresses of each attorney who represented petitioner in the states of judgment are as follows:

a.) At Trial and sentencing : Lawrence L. Taylor,  1020 SW Taylor St. Ste. 230 Portland,

Michael James Evans
Sid No. 11668134
82911 Beach Access Rd.
Umatilla, Oregon 97882

Oregon  97205.

b.) On Direct Appeal:  Laura A. Frikert, 1175 Court St. N.E., Salem, Oregon 97301-4030

c.) On Post-conviction Relief:

    1.) Manuel Perez, 381 West Idaho Ave., Onterio,  Oregon 97914.

    2.) Amber Kolsrud, 381 West Idaho Ave., Onterio, Oregon 97914.

    3.) Noel Grefeson, 1415 Liberty St. NE., Salem, Oregon 97302.

d.) On Appeal from PCR:

    1.) Jebediah Peterson, 522 SW 5th Ave. Ste. 1125, Portland, Oregon 97204.

    2.) Harrison Latto, 1631 N.E. Broadway, No. 533, Portland , Oregon 97232.

    3.) Kenneth Kruescher, P.O. Box 12625, Portland Or. 97212

**3.**This is Petitioner's First ever *Federal* Petition for 28 U.S.C. §2241 writ of Habeas Corpus in this case.

**4.**Petitioner has no future sentence to serve after completion of the sentence imposed by the judgment in the instant case.

a.) Multnomah County Circuit Court, 1021 SW Fourth Ave., Portland, Oregon 97204-1123

b.) County Circuit Court Case No. 061035934;  PCR Case No. 12-03-9338-P;  Appellate Case No. A-161781.

c.) Sentenced to two consecutive 75 month terms.

**5.<u>TIMELINESS OF</u>** <u>PETITION</u>: "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Petitioner's Habeas has been timely filed per 28 U.S.C. § 2244(d)(2).

**6.**This Petition was placed with the Prison Law library Coordinator for E- Filing  on this <u>19th</u> day

Michael James Evans
Sid No. 11668134
82911 Beach Access Rd.
Umatilla, Oregon 97882

of *July* _____, 2022

**WHEREFORE,** petitioner prays that the court will grant such relief to which he may be entitled in this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 by a person in state custody.

### DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury under the laws of the United States of America that I am aware that the foregoing statements are to be used in a legal proceeding and are true and correct.

Respectfully submitted,

_Michael James Evans_____    Dated this 29th day of June; 2022
Michael James Evans , pro se.
11668134 Beach Access Rd.
Umatilla, Oregon 97882

Michael James Evans
Sid No. 11668134
82911 Beach Access Rd.
Umatilla, Oregon 97882

## CERTIFICATE OF SERVICE

CASE NAME: _Michael James Evans_____ v. __Erin Reyes_____

CASE NUMBER: (if known) _____

    COMES NOW, _Michael James Evans, Petitioner____, and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at Two Rivers Correctional Institution. (TRCI)

    That on the _19th_ day of _July_____, 20 _22_, I personally gave Two Rivers Correctional Institution's e-filing service a TRUE COPY of the following:

_____28 USC. § 2241 Writ of Habeas Corpus_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____Michael James Evans_____
(Signature)

Print Name: _Michael James Evans_____

SID #: _1166834_____

Page 1 of 1 – Certificate of Service

Exhibit

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

MICHAEL JAMES EVANS,
*Petitioner-Appellant,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
12039338P; A161781

On remand from the Oregon Supreme Court, *Evans v. Nooth*, 368 Or 159, 487 P3d 42 (2021).

J. Burdette Pratt, Senior Judge.

Submitted on remand July 1, 2021.

Jed Peterson and O'Connor Weber LLC filed the opening brief for appellant. Michael James Evans filed the supplemental brief *pro se*.

Frederick Boss, Deputy Attorney General, Benjamin Gutman, Solicitor General, and Erin K. Galli, Assistant Attorney General, filed the answering brief for respondent.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

JAMES, P. J.

Reversed and remanded.

**JAMES, P. J.**

This post-conviction case, which involves a claim of inadequate assistance by petitioner's appellate counsel, is before us on remand from the Oregon Supreme Court. *Evans v. Nooth*, 368 Or 159, 487 P3d 42 (2021) (*Evans IV*). We had previously affirmed, *Evans v. Nooth*, 300 Or App 331, 452 P3d 1026 (2019) (*Evans III*), but the Supreme Court concluded that our analysis had introduced issues into the case beyond what had been litigated in the post-conviction court and on appeal in *Evans III*. For that reason, the Supreme Court sent the case back to us to consider "the question before the post-conviction court and framed by the parties on appeal," which is "whether, in responding to the state's petition for reconsideration [on direct appeal], appellate counsel had provided inadequate assistance in failing to argue that the trial court's erroneous admission of the doctor's testimony had required reversal of all convictions, including on Counts 13 and 14." *Evans IV*, 368 Or at 165. On reconsideration, we agree with petitioner that his appellate counsel failed to exercise reasonable professional skill and judgment regarding the reversal of Counts 13 and 14, and we conclude that petitioner was prejudiced as a result. Accordingly, we reverse and remand the post-conviction court's judgment and leave it to that court to fashion an appropriate remedy in the first instance.[1]

Most of the pertinent background facts were set out by the Supreme Court, and we draw from that summary to frame the issues on remand:

"The relevant facts are as follows. Petitioner was charged with sexually assaulting two siblings, A and B. A had disclosed the abuse first, reporting both that petitioner had abused her and that she had witnessed him abusing [her brother, B]; several months later, B also disclosed abuse. At trial, the state offered testimony from a doctor who diagnosed A with having been sexually abused, based in part on physical evidence of abuse. Petitioner asked for a hearing under OEC 104, to determine whether that diagnosis was admissible scientific evidence. The trial court opined

---

[1] In *Evans III*, we rejected petitioner's other assignments of error without discussion. The Supreme Court's remand does not affect our disposition of those assignments. *Evans IV*, 368 Or at 167 n 4 (so noting).

that the diagnosis was not scientific evidence, denied petitioner's request for hearing, and admitted the doctor's testimony. A jury convicted petitioner on eight counts involving A and two counts—Counts 13 and 14—involving B. The court imposed concurrent 75-month sentences on the counts related to B, with a longer set of sentences, several consecutive, on the counts related to A.

"Petitioner appealed. Among other assignments of error, he challenged the admission of the doctor's testimony regarding A. The Court of Appeals reversed in part, citing *State v. Southard*, 347 Or 127, 218 P3d 104 (2009) (then recently decided), and concluding that the trial court had erred in admitting the doctor's testimony without conducting an OEC 104 hearing. *State v. Evans*, 236 Or App 467, 470, 236 P3d 848 (*Evans I*), *modified on recons*, 238 Or App 466, 242 P3d 718 (2010) (*Evans II*); *see also Southard*, 347 Or at 139, 142 (diagnosis of 'sexual abuse' not accompanied by physical evidence of abuse qualified as scientific evidence, but was not admissible under OEC 403, because it did not 'tell the jury anything that it could not have determined on its own'). The Court of Appeals reversed and remanded petitioner's convictions on the counts relating to A. However, the court's opinion said nothing about Counts 13 and 14, the counts related to B. *Evans I*, 236 Or App at 470-71.

"The state sought reconsideration, seeking clarification that petitioner's convictions on Counts 13 and 14 had not been affected by the errors identified in *Evans I*. Petitioner's appellate counsel filed a response, which is the genesis of petitioner's inadequate assistance claim. In that response, counsel wrote that petitioner 'agree[d]' that *Evans I* had affirmed on Counts 13 and 14, and did 'not object to modifying the opinion to make that affirmation express.' The response further agreed that remand and resentencing on Counts 13 and 14 were appropriate. The Court of Appeals allowed reconsideration and modified its disposition to expressly affirm petitioner's convictions on Counts 13 and 14. *Evans II*, 238 Or App 466. On remand, the trial court dismissed the counts relating to A at the state's request, but it also resentenced petitioner to consecutive 75-month sentences on Counts 13 and 14.

"Petitioner filed for post-conviction relief, contending that his appellate counsel's response on reconsideration of *Evans I* had amounted to inadequate assistance. He

Exhibit

specifically asserted that counsel should have relied on *Southard* to make an argument that, together with other aspects of the state's evidence, the doctor's testimony improperly had vouched for both A's *and* B's credibility, and had created a substantial risk of prejudice affecting the jury's evaluation of their credibility—such that the error was not harmless as to Counts 13 and 14, requiring reversal. The superintendent countered that *Evans II* affirmatively had stated that Counts 13 and 14 had been 'unaffected by the error' in admitting the doctor's testimony, 238 Or App at 467—stated differently, that the error identified in *Evans I* had been harmless as to Counts 13 and 14, which in turn showed that counsel's response had not prejudiced petitioner. The superintendent otherwise argued that counsel had acted reasonably."

*Evans IV*, 368 Or at 161-65 (emphasis in original; footnotes omitted).

The post-conviction court ultimately denied petitioner's claim. The court reasoned that appellate counsel had acted reasonably because the claim of error in *Evans I* had involved only the failure to hold an OEC 104 hearing and had not implicated *Southard*. Therefore, the post-conviction court concluded, the reason for reversing petitioner's conviction on counts involving A did not extend to Counts 13 and 14, which involved B. The post-conviction court further concluded that petitioner had failed to establish prejudice because he failed to prove that "further action by his appellate attorney would have changed" this court's determination on direct appeal that the error had not affected the verdicts on those two counts.

Petitioner appealed the post-conviction court's judgment, and this court affirmed. We understood the question before us to be whether petitioner had demonstrated that he was entitled to prevail as a matter of law on his claim of inadequate assistance. We explained that appellate work, like trial work, does not involve a one-size fits all approach; "there are a myriad of tactical decisions in how to best conduct litigation that are properly the province of the attorney," but deciding on the broader objectives of litigation—including which convictions to challenge on appeal—is the client's decision to make. *Id.* at 337-38. We then concluded

that petitioner had failed to provide the necessary eviden-
tiary context for us to conclude that he was entitled to pre-
vail as a matter of law.[2]

 The Supreme Court allowed review and reversed
our decision. The court stated, "As can be seen, the question
before the post-conviction court and framed by the parties
on appeal was whether, in responding to the state's petition
for reconsideration of *Evans I*, appellate counsel had pro-
vided inadequate assistance in failing to argue that the trial
court's erroneous admission of the doctor's testimony had
required reversal of all convictions, including on Counts 13
and 14. But the Court of Appeals did not address that ques-
tion." *Evans IV*, 368 Or at 165. Rather, the Supreme Court
explained, we had *sua sponte* "imposed an evidentiary bur-
den on petitioner to establish facts concerning the objectives
of his earlier appeal that had not been at issue below"—that
is, we had "in effect affirmed the post-conviction court's
judgment by invoking the 'right for the wrong reason' prin-
ciple." *Id*. at 166. The court concluded that our approach had
prejudiced petitioner, because he "had no reason to offer evi-
dence of that nature to the post-conviction court." *Id*. And,
accordingly, the Supreme Court reversed and remanded for
us "to consider petitioner's assignment of error as framed
by the parties before the post-conviction court and in their
Court of Appeals briefing." *Id*. at 167.

 With the Supreme Court's directive in mind—and,
in light of that court's observation that petitioner had no
reason to offer evidence regarding his appellate objectives
in the post-conviction court—we proceed upon what we have

---

[2] We concluded:

 "Here, petitioner presented no evidence of the objectives of his appellate
litigation. Consequently, on appeal petitioner is forced to advance a cate-
gorical argument that all appellate attorneys render constitutionally inad-
equate or ineffective representation when they fail to challenge each and
every count of conviction. For the reasons we have discussed, that argument
fails. Alternatively, petitioner may be relying on an unspoken argument that,
absent contrary evidence, a defendant is presumed to want to vigorously chal-
lenge each and every criminal charge as the objective of his litigation, both at
trial and on appeal. But that argument, too, must fail. *** Accordingly, we
cannot conclude that the facts in evidence entitled petitioner to a favorable
decision as a matter of law."

*Evans III*, 300 Or App at 339.

been given, which is the Supreme Court's *assumption* that petitioner's intention was to obtain a retrial on all convictions. We assess the adequacy of appellate counsel's representation on direct appeal in light of that.

To obtain relief under Article I, section 11, of the Oregon Constitution, a post-conviction petitioner must show "that counsel failed to exercise reasonable professional skill and judgment, and that the petitioner suffered prejudice as a result of counsel's inadequacy." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). In determining whether counsel's actions or inaction reflected an absence of "professional skill and judgment," we try to evaluate the lawyer's conduct "from the lawyer's perspective at the time, without the distorting effects of hindsight." *Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002). For that reason, "an appellate decision issued after petitioner's trial cannot, on its own, demonstrate that trial counsel failed to exercise reasonable professional judgment in failing to spot a debatable legal issue." *Antoine v. Taylor*, 368 Or 760, 769, 499 P3d 48 (2021).

With those principles in mind, we turn to the question of counsel's performance: Would an appellate attorney, exercising reasonable skill and judgment at the time of petitioner's direct appeal, have argued that the trial court's erroneous admission of Koeller's medical diagnosis of abuse required reversal of all convictions rather than conceding, as appellant's counsel did on reconsideration, that Counts 13 and 14 were unaffected by the trial court's error? Our answer to that question is yes.

First, we begin by clarifying the scope of petitioner's post-conviction claim. Although much of the focus of this post-conviction case has been on appellate counsel's concession at the reconsideration stage, petitioner's claim itself is slightly broader than that. Petitioner's allegations included the following:

"On October 1, 2009, before oral argument on petitioner's direct appeal, the Oregon Supreme Court decided *State v. Southard*, 347 Or 127, 218 P3d 104 (2009). Based upon this decision, petitioner's appellate counsel knew or should have known that, given the evidence received by the jury as alleged in paragraph 47 above [setting out the proof at

trial], the trial court's failure to grant petitioner an OEC 104 hearing required a reversal of petitioner's convictions for offenses against 'A' and 'B.'

"*On or after October 1, 2009, appellate counsel failed to request that the Court of Appeals reverse and remand Counts 13 and 14 based on* State v. Southard, *347 Or 127, 218 P3d 104 (2009), and on grounds that, together with the evidence identified in paragraph 47 above, Dr. Koeller's expert opinion testimony diagnosing 'A' with sexual abuse, improperly vouched for the credibility of both 'A' and 'B' and created a substantial risk that the jury was prejudiced by that testimony when evaluating the credibility of both 'A' and 'B.' Instead, appellate counsel improperly conceded that petitioner's convictions involving 'B' on Counts 13 and 14, were unaffected by the trial court's error.*

"Competent appellate counsel, exercising reasonable professional skill and judgment, would interpret *State v. Southard*, 347 Or 127, 218 P3d 104 (2009) to support reversal and remand of Counts 13 and 14 for the reasons alleged above and would not concede that Counts 13 and 14 should be affirmed."

(Emphasis added; paragraph numbering omitted.)

As those paragraphs make clear, appellate counsel's concession was the final manifestation of counsel's alleged inadequacy in failing to appreciate the significance of *Southard* and failing to argue that the admission of Koeller's testimony also affected the jury's verdicts as to B. That broader lens is significant, both in terms of evaluating counsel's performance and any resulting prejudice, as discussed later.

Petitioner filed his opening brief on direct appeal at the end of 2008. Petitioner's first assignment of error on direct appeal asserted that "[t]he trial court abused its discretion when it failed to conduct an OEC 104 hearing to determine whether Koeller's medical diagnosis of sexual abuse was scientifically valid," and he relied on the Supreme Court's decision in *State v. Marrington*, 335 Or 555, 73 P3d 911 (2003). In arguing for reversal based on that evidentiary error, petitioner did not distinguish among convictions between A or B or develop much of an argument regarding prejudice—even as to A. His opening brief stated, "For

these reasons, defendant respectfully request[s] that this court, follow *Marrington*, reverse defendant's convictions and remand to the trial court with instructions to conduct an OEC 104 hearing if the state chooses to offer Koeller's testimony on retrial."[3]

After petitioner filed his opening brief, but before the case was submitted, the Oregon Supreme Court issued its decision in *Southard*, a significant case concerning admissibility of medical diagnoses of child sexual abuse. In *Southard*, the defendant had been charged with sexually abusing two siblings, a boy and a girl, who were both evaluated by physicians at an abuse assessment center. The doctor who evaluated the boy diagnosed him as having been abused, but the doctor who examined the girl was unable to reach a diagnosis. *Southard*, 347 Or at 131. The trial court in that case made a pretrial ruling that the diagnosis of sexual abuse was admissible, and the physician who examined the boy testified at trial that, after consulting with the social worker who had interviewed the boy and the director of the abuse assessment center, she had diagnosed the boy as having been sexually abused. The jury heard that and other evidence of abuse and found defendant guilty of three counts of first-degree sodomy, two counts regarding the boy and one count regarding the girl. *Id.*

The Supreme Court allowed review "to consider whether, under the circumstances presented here, a diagnosis of sexual abuse is admissible scientific evidence." *Id.* at 132. The court began by addressing "whether the evidence possesses sufficient scientific validity to be admissible."

---

[3] To the extent petitioner referred to harmless error, it was largely in the context of anticipating a contention from the state that the evidence could be deemed scientifically valid despite the failure to hold the hearing:

"Moreover, despite any forthcoming arguments from the state, the trial court's failure to determine whether Koeller's testimony had a sufficient foundation cannot be deemed harmless error. The fact that this court has ruled other physician's diagnosis of sexual abuse admissible as scientific evidence, based on a developed record as to how that physician reached that opinion, is of no import when the trial court below erroneously failed to require the state to make a similar showing. The issue in this case is whether *Koeller's diagnosis* of sexual abuse was scientifically valid. Because of the error below, no record exists below from which to conclude that Koeller's diagnosis was scientifically valid."

(Emphasis in original.)

*Id.* at 133. In the process, the court explained how a diagnosis of child sexual abuse differs from other types of medical diagnoses:

"A diagnosis of child sex abuse \*\*\* determines whether conduct (an act of sexual abuse by another person) has occurred; the conduct is not complicated, and the ability to determine its occurrence often is a matter within a lay person's competence. In this case, for example, if a lay person were to credit the boy's statements that defendant made him and his sister engage in oral sex, then it follows that the children were sexually abused. It also follows that the doctor's ultimate conclusion in this case—that sexual abuse had occurred—did not turn on an abstruse matter of science; rather, it turned primarily on the sort of credibility determination that lay jurors ordinarily make."

*Id.* at 134-35. Nonetheless, after evaluating the "totality of the procedures" and the record developed, as well as the methodologies used at the abuse center (which included a physical examination for evidence to corroborate the doctor's conclusion), the court held that "the diagnosis possesses sufficient indicia of scientific validity to be admissible"—that is, that it should not automatically be excluded as "bad science." *Id.* at 137, 139.

That, however, was not the end of the inquiry in *Southard*. The court concluded that, although the evidence was scientifically valid, its probative value was substantially outweighed by the risk of prejudice it posed. The court explained that the evidence had relatively low probative value, because the doctor's diagnosis, which was based on reports of oral sex, did not tell the jury anything that it was not equally capable of determining on its own. *Id.* at 140. On the other hand, the risk of prejudice was significant. *Id.* As the court explained:

"The risk of prejudice, however, was great. The fact that the diagnosis came *from a credentialed expert, surrounded with the hallmarks of the scientific method, created a substantial risk that the jury may be overly impressed or prejudiced by a perhaps misplaced aura of reliability or validity of the evidence.* [*State v. Brown*, 297 Or 404, 439, 687 P2d 751 (1984)]. As in *Brown*, the diagnosis is particularly problematic because the diagnosis, which was based primarily on an assessment of the boy's credibility, posed the risk that

the jury will not make its own credibility determination, which it is fully capable of doing, but will instead defer to the expert's implicit conclusion that the victim's reports of abuse are credible. *See id.* at 440-41 (reasoning that polygraph evidence could effectively take over the jury's traditional function of judging the credibility of witnesses). In our view, the risk of prejudice substantially outweighs the minimal probative value of the diagnosis."

*Southard,* 347 Or at 140-41 (emphasis added; some internal quotation marks and alterations omitted). The court then reversed all of the convictions—involving abuse of the boy and the girl—without differentiating between the prejudice as to the two. *Id.* at 143 ("The state has not argued that the admission of that evidence was harmless, and our review of the record confirms that the state reasonably has declined to make that argument.").

As discussed above, in *Evans I,* we relied on *Southard* in concluding that the trial court erred in admitting Koeller's diagnosis of sexual abuse. We held that "the trial court erred in failing to hold a hearing under OEC 104 to determine the admissibility of Koeller's diagnosis." *Evans I,* 236 Or App at 470. "That determination," we explained, "would have encompassed an inquiry into the relevance of the evidence under OEC 401, whether the testimony would be helpful to the jury under OEC 702, *and a weighing of prejudice under OEC 403. Southard,* 347 Or at 139." *Evans I,* 236 Or App at 470 (emphasis added).

After *Southard* was decided, and at least by the point that we decided *Evans I*—in which we specifically identified the weighing of prejudice as a potential factor on remand—it should have been apparent to petitioner's appellate counsel that the erroneous admission of a diagnosis of sexual abuse as to A could have influenced the jury's verdict as to the counts involving B as well. That is for two reasons: First, *Southard* itself involved that same scenario, and the Supreme Court had reversed all convictions. Second, *Southard*'s approach was not new; it was consistent with basic and well-established principles of prejudice involving evidentiary error.

Then, and now, evidentiary error is not presumptively prejudicial under Oregon law. *See* OEC 103(1). The

inquiry for whether erroneous admission of evidence requires reversal of a conviction is whether there is "little likelihood" that the admission of the evidence affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As we observed in 2008 in *State v. Vargas-Samado*, 223 Or App 15, 19, 195 P3d 464 (2008),

> "the correct focus of that inquiry is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling. As an initial step, the court determines the particular evidentiary issue that is subject to harmless error analysis. After identifying the pertinent issue, the court considers the nature of the erroneously admitted evidence in the context of other evidence on the same issue. In determining the possible influence of the error on the verdict, we also consider the importance of the erroneously admitted evidence to a party's theory of the case. If erroneously admitted evidence relates to a central factual issue to the case, it is more likely to have affected the determination than if it dealt with a tangential issue. *In short, our function is to determine whether, given the nature of the erroneously admitted evidence and its relationship, as framed by the parties' presentations, to the matters essential to the jury's verdict, there was little likelihood that that evidence affected the verdict."*

(Emphasis added.)

Reasonable appellate counsel, applying that basic framework, should have recognized that the erroneous admission of a medical diagnosis of sexual abuse went to a central factual issue in the case on all charges: A's credibility. This was a case in which A, who is two years older than B, initially disclosed that she had been abused, and she had reported seeing B being abused by petitioner as well. B, however, had not disclosed abuse until much later; and, during trial, even by the prosecutor's acknowledgment, B's testimony was less compelling. The prosecutor told the jury, "Now, it would be foolish for me to stand up here and argue to you that [B's] disclosures and [B's] testimony was as compelling as [A's]. It was not." Rather, the prosecutor explained that A's testimony was critical to the jury's deliberations:

"Next in the case you heard from what I would submit to you was the most important witness in the case and that was [A]. That, I expect, will be the center piece of your discussions, of defense counsel's argument and of your verdict is what [A] said, what [A] said here on Tuesday, what she said when she first disclosed the sexual abuse to the psychologist * * *, what she said when she went to CARES, what she said when she went and had therapy * * *."

What she first disclosed to the psychologist, and what that psychologist testified to at trial, was that A "said that [petitioner] had had [B] come in and be involved in the sexual abuse, that [petitioner] had touched [B's] penis and had [B] touch his penis."

The prosecutor also relied heavily on Koeller's testimony, including her diagnosis of sexual abuse, to bolster A's credibility and corroborate her version of events and disclosures of abuse. The prosecutor argued, "After the kids testified, then yesterday was—I think you all agree—a full day of testimony. Second only to [A] in terms of impact on this case was the testimony of Dr. Paula Koeller."

Given the overlapping proof, intertwined testimony involving the abuse of A and B, the relative strength of A's and B's testimony, and the prosecutor's reliance on A's and Koeller's testimony, reasonable appellate counsel should have appreciated that the erroneously admitted diagnosis of sexual abuse had the potential to affect the jury's deliberations as to all counts, including the counts involving B. As *Southard* explained, the risk of prejudice from the erroneously admitted diagnosis of sexual abuse was that the jury would hear that diagnosis from a credentialed expert and defer to Koeller's implicit conclusion that A's reports of abuse were credible.[4] And, given the prosecutor's heavy reliance on A's credibility to prove the charges involving B, the erroneous admission would tend to affect those verdicts as well. *See State v. Wood*, 253 Or App 97, 102, 289 P3d 348 (2012) (reversing convictions where factfinder's verdict "rested

---

[4] Koeller was asked on direct examination, "And how important is the interview to your ultimate diagnosis or recommendation?" Koeller responded, "Uhm, I would not be able to make a diagnosis of sexual abuse with just this finding. It takes both the disclosure—well, it takes all parts. I mean, it takes the disclosure and the example in order to make a diagnosis."

on the credibility and corroboration of B's testimony, and
the improperly admitted hearsay evidence bore directly on
both").

In fact, other appellate attorneys were making
similar arguments around the same time in cases involv-
ing multiple victims and erroneously introduced diagnoses
of sexual abuse. In *State v. Freitas*, 243 Or App 231, 237,
259 P3d 46 (2011), *rev den*, 351 Or 545 (2012), the defen-
dant argued that "*Southard* instructs that the admission of
a diagnosis of sexual abuse as to one victim will always cre-
ate a substantial risk that the jury will defer to that diag-
nosis in judging the credibility of all the victims in a case."
We rejected that categorical argument, instead applying our
ordinary harmless error analysis and examining the poten-
tial effect of the erroneously admitted evidence on the jury's
verdict. In doing so, we observed that the expert's testimony
about one victim did not rely upon or comment on the other
victim's claims of abuse and we found "no other indication
in the record that defendant's convictions for the abuse of
[one victim] were based on [the other victim's] testimony, or
on the erroneously admitted expert testimony. *Southard*,
therefore, does not require reversal of the charges as to both
victims." *Id.* at 238-39.

Shortly thereafter, in *State v. Cox*, 248 Or App 325,
327, 273 P3d 299 (2012), we again addressed a defendant's
argument that, "because the erroneously admitted diagno-
sis affected the jury's decision to convict him on the charges
involving E, who had not been diagnosed as having been
sexually abused, all of defendant's convictions, not just those
involving K, should be reversed." We framed the question in
terms of ancillary prejudice: "[B]ecause—as we concluded
above—K's diagnosis likely affected the jury's conclusion
about the credibility of K's testimony concerning his abuse,
did that conclusion have the ancillary consequence of affect-
ing the jury's determination of whether E's testimony about
her abuse was also credible?" *Id.* at 331. In contrast to the
record in *Frietas*, we concluded in *Cox* that the admission
had ancillary consequences for three reasons: (1) K's cred-
ibility was inextricably tied to E's credibility and, thereby,
likely served an important role in the jury's determination
of the truthfulness of E's testimony; (2) the prosecutor's

comments during his closing argument purposely joined K
and E's credibility into a single consideration for the jury
and strongly suggested that the diagnosis showed that
both victims were telling the truth; and (3) K's testimony
cross-corroborated various aspects of E's testimony regard-
ing her abuse." *Id.* at 331-32.

    The superintendent points out that those cases
were not decided until after the direct appeal in this case.
That is true, but it is beside the point. *Cox* and *Frietas* did
not change the harmless error analysis; they simply applied
existing principles to factual scenarios involving multiple
abuse victims and an error in admitting an abuse diag-
nosis as to one victim. There is no reasonable explanation
for why petitioner's appellate counsel did not do that same
thing on direct appeal, either in briefing before our decision
in *Evans I* or, at the very least, after the issue was flagged
in the state's petition for reconsideration.

    In ruling to the contrary, the post-conviction court
concluded that counsel had "no basis" for objecting to the
state's petition for reconsideration because *Southard* was
distinguishable:

> "There was no basis for such an objection. The counts that
> were reversed related to A and were reversed because the
> trial court failed to conduct a necessary hearing to deter-
> mine the admissibility of expert testimony that A had been
> sexually abused. *State v. Southard*, 347 Or 127 (2009), does
> not apply. In this case there was physical evidence of pos-
> sible abuse so an expert could give a diagnosis of sexual
> abuse if the testimony were otherwise admissible. The rea-
> son for the other counts being remanded for further consid-
> eration was not based on a *Southard* argument. Since the
> reason for the reversal and remand on the other counts did
> not apply to counts 13 and 14, Petitioner's appellate attor-
> ney was not ineffective for conceding that counts 13 and 14
> were affirmed."

That analysis misstates the prejudice inquiry applied by
an appellate court. When evidence is erroneously admitted,
we consider how that error affects the jury's deliberations,
not simply the reason for the error or what might occur
on remand. In this case, regardless of whether the state
could have laid the foundation for admission of the medical

diagnosis, the fact remains that it did not, and we declined in *Evans II* to remand the case on a more limited basis. Thus, the question for appellate counsel was not whether the evidence was erroneously admitted as to B for the same reason it was erroneously admitted as to A. Instead, the question was whether the erroneous admission of the medical diagnosis had a tendency to taint the jury's verdict as to both children by bolstering A's testimony and corroborating her reports of abuse of herself and B.

For the reasons stated above, we conclude that appellate counsel failed to exercise reasonable professional skill and judgment when she failed to argue on direct appeal—and then further conceded in response to the state's petition for reconsideration—that the verdicts on Counts 13 and 14 "were affirmed and remanded for resentencing." At the very least, appellate counsel should have responded to the state's petition by alerting this court that (a) our opinion had not dealt with those convictions (either expressly or with a tag line that said "otherwise affirmed") and (b) that, under *Southard* and our typical assessment of prejudice, all counts must be reversed.

Next, we turn to the question of prejudice. A petitioner seeking post-conviction relief stemming from a claim of inadequate assistance of appellate counsel for failing to assert a claimed error must establish not only that competent appellate counsel would have asserted the claim, but that "had the claim of error been raised, it is more probable than not that the result would have been different. In short, [petitioners] must show that [they were] prejudiced." *Guinn v. Cupp*, 304 Or 488, 496, 747 P2d 984 (1987). Petitioner satisfied that standard. In this case, not only did appellate counsel have a plausible argument on prejudice that should have been asserted; petitioner had a winning argument. If petitioner's counsel had presented a developed prejudice argument to this court, either before *Evans I* or on reconsideration (considering that *Southard* had been decided after his initial briefing), he likely would have prevailed on that claim, just as the defendant in *Cox* had, and his convictions on Counts 13 and 14 would have been reversed and remanded along with the counts involving A.

In concluding otherwise, the post-conviction court reasoned that we had already "determined that the reasons for reversing the other counts did not affect counts 13 and 14," so "[p]etitioner did not prove that further action by his appellate attorney would have changed that determination." The superintendent advances a similar argument, asserting that appellate counsel's response to the petition for reconsideration amounted to a concession that this court had already determined harmlessness, not a concession on the merits of that issue. The superintendent also argues, "even if petitioner is correct that appellate counsel conceded that the error did not affect counts 13 and 14, this court is not bound by a party's concession on a legal issue."

We reject that line of reasoning. First, it does not account for the breadth of petitioner's claim, which is not strictly limited to the concession on reconsideration but fairly can be read to encompass appellate counsel's post-*Southard* failure to make any prejudice argument. Second, and relatedly, it fails to appreciate the role that appellate counsel's arguments and concessions play in a harmless error analysis on appeal. It is correct that this court is not bound by concessions of law, but it is also an appellant's burden to demonstrate that an evidentiary error is prejudicial. The Supreme Court's decisions in *State v. Leistiko*, 352 Or 172, 282 P3d 857 (*Leistiko I*), *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012) (*Leistiko II*), are illustrative. In the court's original opinion, it explained:

"Defendant argues that, if the trial court erred in admitting the fourth woman's testimony, the error prejudiced him. The state does not argue that the error was harmless, and we agree that the admission of the fourth woman's testimony prejudiced defendant. *The remaining question is the effect of the error.* On appeal and again on review, defendant has argued that the erroneous admission of the fourth woman's testimony requires that his 'convictions' be reversed, *but he has not specified which convictions*, other than his two first-degree rape convictions, may have been affected by the error. *Given the absence of any argument by defendant that the erroneous admission of the fourth woman's testimony affected any conviction other than his first-degree rape convictions, we reverse the Court of Appeals decision to the extent that it affirmed the two first-degree*

*rape convictions. Cf.* OEC 103(1) (evidential error is not pre-
sumed prejudicial)."

*Leistiko I*, 352 Or at 189 (emphases added).

The defendant then sought reconsideration, argu-
ing that the court had missed his harmless error argument;
alternatively, he asked the court to consider it for the first
time on reconsideration. The Supreme Court allowed recon-
sideration but adhered to its decision, concluding that peti-
tioner had not raised the issue in his earlier briefing and
that it was not appropriate to consider it for the first time on
reconsideration. *Leistiko II*, 352 Or at 624.

In this case, our earlier decisions in *Evans I* and
*Evans II* were affected by appellate counsel's failure to exer-
cise reasonable professional skill and judgment in develop-
ing a harmless error argument regarding Counts 13 and
14. Had appellate counsel done so, it is more probable than
not that petitioner would have obtained a reversal of those
convictions. For that reason, petitioner is entitled to post-
conviction relief.

That leaves the question of remedy. As the superin-
tendent points out, after our decision in *Evans II*, the state
dismissed the counts involving A and proceeded to resen-
tencing on counts involving B. We generally agree with the
superintendent that the case should be returned to the sta-
tus it would have been in had petitioner's counsel provided
constitutionally adequate representation—that is, with
petitioner facing the possibility of retrial on the remanded
counts involving A as well as B. However, the post-conviction
court has not had the opportunity to address the question of
what remedy to fashion in light of all the circumstances,
and we therefore reverse and remand for the post-conviction
court to address that question in the first instance.

Reversed and remanded.